290 N.J. Super. 240 (1996)
675 A.2d 678
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
S.A., DEFENDANT RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 20, 1996.
Decided May 14, 1996.
*241 Before Judges KING, LANDAU and KLEINER.
Carmen Messano, Prosecutor of Hudson County, for appellant (Milagros Camacho, Assistant Prosecutor, on the brief).
*242 Charles A. Gallagher, for respondent.
The opinion of the court was delivered by KING, P.J.A.D.
This case involves the right of a defendant in a domestic violence action to the return of three handguns. The State failed to move for forfeiture under N.J.S.A. 2C:25-21(d)(1) within 45 days and defendant demanded return of the guns. The State claims that 18 U.S.C.A. § 922(g)(8) of the federal firearms statute prohibits return of the guns. We agree that defendant has no immediate right to the guns and reverse the order of the Family Part judge requiring their return to the defendant.

I.
A.V., of Jersey City, was involved in a romantic relationship with defendant for about ten months in 1993-1994. During this period, defendant had the keys to A.V.'s apartment, where he kept some clothes and stayed overnight on a few occasions each month. A.V. claimed that on several occasions defendant threatened that he "was gonna put drugs in me, he was gonna shoot me or he was gonna burn my car down." A.V. also testified that defendant hit her on one occasion and slapped her son, age four, in the face with an open hand, apparently in April 1994.
On the evening of June 20, 1994 defendant became upset. On the day before, A.V. had said she could not go to the beach with him because she had to care for her son who was ill. Defendant was friendly with A.V.'s brothers and he went to the beach with them instead. When defendant returned from the beach, he cursed repeatedly at A.V., cut the cord on her air conditioner, broke her car radio, ripped and burned personal photographs, broke her picture frames, and took her dining-room furniture and most of her clothes. A.V. testified at a later proceeding that defendant "wanted to hit me [during the beach argument] and I did not let him hit me."
*243 A.V. testified that she was afraid of defendant "because he's really crazy," but admitted she waited two months before seeking a domestic violence restraining order because she "thought that he was only talking." A.V. believed defendant was following her to her work. He told her over the phone that he knew where she was working at a new job in Hoboken. As a homemaker for Health Force, A.V. assisted patients at various locations; she testified that defendant knew all of them. A.V. first stated, unambiguously, that "I know that he's following me to my job," but then moments later stated, "I'm not saying that he's following me, ...."
At the time of the August 17, 1994 hearing on the temporary restraining order (TRO), A.V. said she had not seen or spoken with defendant for three weeks but that defendant always asked her brothers and brother-in-law about her. A.V. stated that she "beeped" defendant in July and he told her to call him "to continue talking about these things." They also argued over whether defendant would compensate A.V. for her car radio which he broke. She refused to accept $100 which defendant sent through her brother because the radio cost more. A.V. testified in general terms that "he used to say to me," including when they last spoke three weeks before the hearing, "that whenever he sees me, he's gonna do something to me." She later testified, at the final hearing on the restraining order, that defendant had never threatened her with a gun. She did not believe he was going to shoot her with one of his guns.
A.V. testified that defendant always carried, on his person or in a bag, at least one small gun. He once showed her what she understood was a permit to carry. Defendant carried the gun, A.V. said, because "he has a lot of problems, not only with me but with a lot of people." A.V. said defendant was employed but she did not know what type of work he did. She thought perhaps he was a truck driver, as he had a trailer truck. He told her that he formerly was a police officer and had worked for the FBI. A.V. recalled that the police frequently came to her house and picked *244 up defendant "at any time." She could not identify whether the police who picked up defendant were Jersey City police, Hudson County police, or some other kind of police. She did not know where defendant went with them. A.V. also said that the Jersey City police officers were "all very good friends with" defendant. She did not believe that defendant was a police officer but remembered that he had a uniform and a badge which he never used. She did not say what kind of uniform, but she apparently meant a police uniform. Defendant remarked in his testimony that he knew the local prosecutor, Mr. Posner.

II.
On August 17, 1994 the hearing officer granted A.V. a TRO under N.J.S.A. 2C:25-12(f) as necessary to protect her life, health or well-being. The TRO prohibited defendant from returning to A.V.'s apartment; appearing in or around any of A.V.'s places of work; committing any future acts of domestic violence; having any contact with A.V. or any of her household members; and making any harassing communications to A.V. or her roommate or clients. The TRO also prohibited defendant from possessing any weapons.
The return date of the August 17, 1994 TRO was August 26, 1994. Defendant did not appear. Notice had been sent to him at 47 Logan Avenue, Jersey City, which A.V. testified was his last known address, to the best of her knowledge. At the TRO hearing on August 17, A.V. testified that while defendant was dating her he lived and received his mail at 47 Logan Avenue, Jersey City, where his relatives lived. A.V. said the house at 47 Logan belonged to defendant's father but she did not know who actually lived there because his parents lived on a "Van Ripen" Avenue. She then said that in June 1994 defendant lived with his parents not at 47 Logan but at another address on "Van Ripen." The hearing officer concluded, "we have no address on him...." The State later conceded, "We've checked with the post office and *245 apparently the defendant has not been there [47 Logan] in the past five years."
At the August 26 continued TRO proceeding, the judge decided to send notice to defendant by certified mail at 47 Logan Avenue and continued the TRO hearing until September 2, 1994 because defendant was again not present. On September 2, 1994, at the final restraining order hearing, the judge made the order final and issued a warrant for defendant's arrest, relying on N.J.S.A. 2C:33-4(a) (petty disorderly-persons offense, offensive communication to another). The order also provided that the police confiscate defendant's guns and firearm purchaser identification card.
On September 6, 1994 defendant finally appeared in court. He claimed that he was not aware that a restraining order had been issued against him because the notice of hearing had been sent to his "old address." He explained that he found out about the warrant for his arrest from his brother. The judge issued an amended TRO on September 6, 1994 making two changes from the September 2 order: first, it prohibited defendant from having contact with A.V.'s family or household members rather than just A.V.; second, it prohibited defendant from making harassing communications to A.V.'s son also, rather than just A.V. The judge's September 6, 1994 order recalled the warrant for defendant's arrest, with the understanding that he would arrange to turn his guns in to the police. The Hudson County Sheriff confiscated defendant's guns.
The final restraining order hearing originally scheduled for September 27, 1994 was rescheduled for October 12, 1994 at the request of defendant's attorney because of a conflicting trial obligation. The judge continued the restraining order against defendant until the new October 12, 1994 hearing date. On this date, defendant and A.V. stipulated before the judge that each had committed acts of domestic violence against the other and that they sought mutual restraining orders. On September 8 defendant had filed a domestic violence complaint alleging that A.V. had committed an act of domestic violence against him on August 25. *246 A.V. acknowledged that she "beeped" defendant on his pager for no reason at all but denied that she had gone to his home uninvited. Defendant, in turn, admitted that he had threatened A.V. with some unspecified consequence if she did not stop calling him on the beeper. The judge entered a restraining order against A.V., prohibiting her from going either to defendant's home or to a car wash which he owned, and from contacting him by beeper, by phone, by mail, or otherwise.
At this same hearing, the judge also denied defendant's application to return the guns. The judge stated, however, that the guns would be returned to defendant if the State failed to file a motion for forfeiture, as required by the statute, N.J.S.A. 2C:25-21(d)(3), within 45 days of the seizure. The Sheriff's inventory described the seized guns as follows:
Below weapons and firearms I.D. Card confiscated per Domestic Violation Restraining Order Issued 09/02/94, by SCJ, Docket #FV-09-954-95.
-Smith and Wesson model #659 Serial #TAS5960 No Clip (9MM)
-Smith and Wesson Model  .45 Cal. of 1989 Serial #M399
-One State of N.J. Firearms I.D. Card in the Name of [defendant] address [] Paterson NJ I.D. #624210B
-One Black Canvas Bag
-One Black Plastic Case
-All Weapons have trigger locks attached-Total Three (3)
-Two Keys for trigger locks
Defendant returned to court about a year later on September 9, 1995, again seeking to compel the State to return the guns seized from him pursuant to the TRO entered on August 17, 1994. Because the State had failed to move to forfeit defendant's guns within 45 days of seizure as required by N.J.S.A. 2C:25-21(d)(3), the judge ordered the guns and firearms purchaser's identification card returned. The judge said that defendant might possibly be prohibited from possessing a firearm by both a state statute and a federal statute but left it up to defendant and the State to litigate the point if the State should later move under N.J.S.A. 2C:58-3(c)(6) for revocation of the purchaser's identification card because defendant was under a domestic violence order.
*247 N.J.S.A 2C:58-3(c)(6) prohibits the issuance of a handgun purchase permit or firearms-purchaser identification card to a person who is subject to a domestic violence court order under N.J.S.A. 2C:25-29. The federal statute purportedly applicable is 18 U.S.C. § 922(g)(8), which forbids firearms possession by anyone subject to a domestic-violence order which meets certain criteria. The judge thought that 18 U.S.C. § 922(g)(8) is applicable only when the gun owner is charged with a federal offense, or perhaps when defendant is tried in a federal court.
The judge stayed his order to return the guns to the defendant to permit the State to appeal the issue of whether 18 U.S.C. § 922(g)(8) applied. The prosecutor now contends that 18 U.S.C. § 922(g)(8) controls and preempts the New Jersey statutory scheme. The prosecutor asserts that even if New Jersey law is construed to require return of the guns, federal law prohibits their return.

III.
The federal statute, 18 U.S.C. § 922(g)(8), provides, in pertinent part:
It shall be unlawful for any person 
* * * * * * * *
(8) who is subject to a court order that 
(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; [and]
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury,
to ... possess in or affecting commerce, any firearm or ammunition; ....
18 U.S.C. § 922(g)(8) was added to the firearms law by § 110401(c) of Pub. Law 103-322, as part of the Violent Crime *248 Control and Law Enforcement Act of 1994. That act amended Title I of the Omnibus Crime Control and Safe Streets Act of 1968, see generally 42 U.S.C. § 13701 to § 14223. That comprehensive 1994 statute was enacted "to allow grants to increase police presence, to expand and improve cooperative efforts between law enforcement agencies and members of the community to address crime and disorder problems, and otherwise to enhance public safety." H.R.Rep. No. 324, 103d Cong., 1st Sess. (Nov. 3, 1993), reprinted in 1994 U.S.C.C.A.N. 1801 and at 1993 WL 452531.
The State statute, N.J.S.A. 2C:25-21(d), provides:
d. (1) In addition to a law enforcement officer's authority to seize any weapon that is contraband, evidence or an instrumentality of crime, a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed may:
(a) question persons present to determine whether there are weapons on the premises; and
(b) upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury.
(2) A law enforcement officer shall deliver all weapons seized pursuant to this section to the county prosecutor and shall append an inventory of all seized weapons to the domestic violence report.
(3) Weapons seized in accordance with the above shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.

A hearing shall be held and a record made thereof within 15 days of the notice provided above. No formal pleading and no filing fee shall be required as a preliminary to such hearing. The hearing shall be summary in nature. Appeals from the results of the hearing shall be to the Superior Court, Appellate Division, in accordance with the law.
If the prosecutor does not institute an action within 45 days of seizure, the seized weapons shall be returned to the owner.

*249 After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists. [Emphasis supplied.]
As seen, N.J.S.A. 2C:25-21(d)(3) clearly provides, "If the prosecutor does not institute an action [for forfeiture] within 45 days of seizure, the seized weapons shall be returned to the owner." But this sentence must be read together with the part of subsection (d)(3) which provides, "weapons seized in accordance with the above shall be returned to the owner except upon order of the Superior Court." Subsection (d)(3) clearly contemplates a forfeiture proceeding designed to revoke ownership if the prosecutor moves within 45 days but also clearly contemplates that no weapon shall be returned if the court finds "that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular," N.J.S.A. 2C:25-21(d)(3), unless "the domestic violence situation no longer exists." Id.
We interpret our state statute to permit the State to seize weapons owned by a person who violates the Domestic Violence Act. The State may then retain possession of the weapons as long as the court deems that person a threat to the victim of domestic violence. In addition, the State has the right, within 45 days of the seizure, to seek a forfeiture of title to the weapons. The State did not do this in the present case. But the failure of the State to seek a forfeiture does not give the defendant the automatic right under New Jersey law to the return of the seized weapon so long as the domestic violence restraining order is outstanding. See State v. Solomon, 262 N.J. Super. 618, 624, 621 A.2d 559 (Ch.Div. 1993).
To this extent, the federal (18 U.S.C.A. § 922(g)(8)) and our State (N.J.S.A. 2C:25-21(d)(3)) statutes are harmonious and not in conflict. If the defendant is no longer a threat, the restraining order can be modified or dissolved and the weapons can be returned. See N.J.S.A. 2C:25-29d; A.B. v. L.M., 289 N.J. Super. *250 125, 672 A.2d 1296 (App.Div. 1996); Mann v. Mann, 270 N.J. Super. 269, 274, 637 A.2d 170 (App.Div. 1993); Torres v. Lancellotti, 257 N.J. Super. 126, 607 A.2d 1375 (Ch.Div. 1992). However, since the prosecutor did not move within 45 days, the guns cannot now under this section of the statute, absent new circumstances permitting forfeiture, be forfeited. We conclude that because the State and federal statutes, as we construe them, are not in actual conflict, the issue of federal preemption does not arise. The State statute, as we construe it, is consistent with the federal statute and does not stand as an impediment to the accomplishment and execution of the purposes and objectives of Congress in enacting 18 U.S.C.A. § 922(g)(8). See Michigan Canners and Freezers Ass'n. v. Agricultural Marketing and Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984).
The restraining order against defendant clearly satisfied the criteria of 18 U.S.C. § 922(g)(8)(B) and (C) which conditions the bar to firearm possession on whether the court order in question "restrains such person from harassing, stalking, or threatening an intimate partner of such person, ...." The second amended FRO against defendant, issued on September 6, 1994, states that defendant is "prohibited from making harassing communications to ... [plaintiff A.V.]  and her Son  ." (citing authority of N.J.S.A. 2C:25-29b(7)). An earlier amended FRO, issued September 2, 1994, was replaced, apparently because it neglected to include A.V.'s son within its protection. 18 U.S.C. § 922(g)(8)(C) states that the restraining order must "(i) include[] a finding that such person represents a credible threat to the physical safety of such intimate partner or child;...." The domestic-violence restraining order recites, "The Court, having considered plaintiff's complaint ... and having found good cause to believe the plaintiff's life, health and well-being have been and are endangered by defendant(s) acts of violence." A.V.'s testimony provided ample support for the judge to make this finding, which satisfies § 922(g)(8)(C)(i).
*251 The restraining order against defendant also satisfies the criterion enunciated in 18 U.S.C. § 922(g)(8)(A) that firearm possession is forbidden only if the restraining order in question "was issued after a hearing of which [the person subject to the order] received actual notice, and at which such person had an opportunity to participate; ...." 18 U.S.C. § 922(g)(8)(A). The September 2, 1994 proceeding culminated in the issuance of a FRO against defendant and a warrant for his arrest. Defendant was not present and did not have notice of that proceeding. Defendant did appear at the September 6 proceeding, though only because his brother informed him that a warrant had been issued for his arrest pursuant to the September 2 amended final order.
The operative "court order" is the third amended final order. That order was issued after the October 12, 1994 hearing, a proceeding of which defendant had actual notice and at which he was present and represented by counsel. While it would have been better if defendant had received notice of the earlier hearings, he had actual notice of the October 12, 1994 hearing, which led to the issuance of the third and last FRO. He also had actual notice of and was present at the September 6, 1994 hearing, which led to the issuance of the second amended FRO. He was present and represented by counsel and had an opportunity to participate fully in the October 12 hearing. In fact, the judge postponed the hearing from September 27 to accommodate other obligations of his counsel.
The restraining order to which defendant is subject satisfies all the criteria of 18 U.S.C. § 922(g)(8)(A)  (C). Consequently, at the time the judge ordered the State to return defendant's firearms to him, it was illegal under federal law for defendant to possess those firearms. The judge should not have so ordered.
The order of May 9, 1995 requiring the return of the guns and the firearm's purchaser identification card to defendant is reversed as a violation of 18 U.S.C.A. § 922(g)(8). The guns may not be returned to defendant so long as the domestic violence restraining order is outstanding.
*252 The cross-appeal is dismissed as untimely and clearly without merit. R. 2:4-1; R. 2:11-3(e)(1)(a).[1]
Reversed on the appeal; cross-appeal dismissed.
NOTES
[1] We note that defendant has presented no constitutional challenge to 18 U.S.C.A. § 922(g)(8). See United States v. Lopez, ___ U.S. ___, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).