290 N.J. Super. 451 (1996)
676 A.2d 138
IN THE MATTER OF RETURN OF WEAPONS OF J.W.D.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 1996.
Decided May 15, 1996.
*452 Before Judges SHEBELL, STERN and NEWMAN.
Gebhardt & Kiefer, attorneys for appellant, J.W.D. (William W. Goodwin, Jr. and Irene A. Cirolla, on the brief).
*453 Sharon B. Ransavage, Hunterdon County Prosecutor, attorney for respondent, State of New Jersey (James C. Lankford, Assistant Prosecutor, of counsel; Dawn K. Scala, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
J.W.D. appeals from the Family Part's denial of a return of his weapons and revocation of his firearms purchaser's identification card after domestic violence charges against him were dismissed. Although we reverse in the present case, we now hold that weapons need not be returned under N.J.S.A. 2C:25-21d(3) even though no criminal or domestic violence charges remain and the domestic violence situation has abated, where the court finds that the owner poses a threat to the public or any person in particular.
On June 2, 1992, after a dispute which allegedly resulted in some physical contact, S.D. signed a domestic violence complaint against her husband, J.W.D. A temporary restraining order (TRO) was issued ex parte against J.W.D. pursuant to the Prevention of Domestic Violence Act. N.J.S.A. 2C:25-17 et seq. In accordance with the TRO, his guns and firearms purchaser's identification card were confiscated by the police.
A Domestic Violence hearing commenced on June 4, 1992, but was adjourned for two weeks. On June 18, 1992, the wife agreed to dismiss the complaint, to separate from her husband for 60 days and to attend counseling with him. The temporary restraints were lifted, and the husband's weapons and purchaser's identification card were subsequently returned to him in December, 1992, without objection.
On August 27, 1992, the wife filed a complaint for divorce.[1] During the pendency of the divorce action, on December 26, 1994, *454 the wife signed another domestic violence complaint against her husband stemming from an alleged "shoving match" between the two during a custody exchange. A TRO was issued which required the husband's weapons and purchaser's identification card to be confiscated by the police. On December 29, 1994, the husband filed a domestic violence complaint against his wife and he also signed a complaint against her in Municipal Court. The wife then filed a complaint in Municipal Court for the same incident. The Municipal Court complaints were later mutually dismissed. After a hearing on the merits on the cross-domestic violence complaints, on January 5, 1995, the judge dismissed the complaints and the TRO against the husband was dissolved.
On February 1, 1995, the Prosecutor's Office filed an objection to the return of weapons and firearms purchaser's identification card to the husband and sought their forfeiture pursuant to N.J.S.A. 2C:25-21d(3) and N.J.S.A. 2C:58-3f. See also N.J.S.A. 2C:58-3c(5). A hearing was held on May 25, 1995, at which only the husband and wife testified. Appellant had requested an adjournment to present the testimony of his present girlfriend, who was on strike duty in New York, and of his father, in his mid 70's, who lived in Pennsylvania. His request was denied. The judge revoked the firearms purchaser's identification card and ordered that the weapons be forfeited to the State. His order, issued on June 13, 1995, was stayed pending this appeal.
The couple was married on April 12, 1980. The husband, now approximately 47 years old, has a Ph.D. in Chemical Engineering and is employed in that field. He is also a Commander in the Naval Reserves and had previously served in the Navy for four years, as an officer, during the Vietnam War. One child was born of the marriage in 1990.
Ever since the wife had known her husband, he always had guns and used them recreationally. His collection, lawfully obtained, consists of 5 firearms; a Browning .22 caliber semi-automatic pistol; a Colt .22 caliber semi-automatic pistol; a Star .38 caliber *455 semi-automatic pistol; a Remington Bolt Action rifle and a Remington pump-action shotgun.
During the pendency of the divorce action, on December 26, 1994, the wife signed the second domestic violence complaint against her husband. In her affidavit supporting the complaint, she alleged that their child was visiting her husband's home and that when she arrived on the porch to pick up her son, she noticed her son was not wearing the jacket he had worn when his father picked him up. She told the father she wanted the jacket, but he responded by attempting to close the front door. The wife placed her foot on the door's threshold preventing him from doing so. He then attempted to push her off the porch, and she grabbed onto him. Apparently, due to her grabbing him, his wrist was scratched. The husband admitted pushing his wife, but asserted it was only enough so he could close the door.
The wife in objecting to the weapons being returned to her husband testified as to an incident which occurred on September 15, 1992. On that date, after she moved out of the marital home, she returned to pick up some of her belongings. Her husband was not home, but she saw "Post-It" notes stuck on the windows which said in his handwriting "Danger, enter at your own risk." She looked in the kitchen window and saw something under a towel, shaped like a handgun with cord coming from it and attached to the front door, which gave her the impression that if the door were opened, the cord would pull. She then looked in a garage window and saw something with a blanket thrown over it, which looked like a rifle, and which was also connected by a cord to the garage door. She left the premises and called her attorney. She asserted that upon her return, the notes were removed from the windows. Despite the apparent possibility that her husband was present, she entered the house through the patio window. In the kitchen she found that it was only a hand drill under the towel, and in the garage, all that was underneath the blanket was a broomstick.
*456 The wife further testified that while they lived together, she had seen her husband practice drawing and aiming his guns around the house. She said he had pointed the weapon at her in jest but she did not know whether it was loaded at the time. She noted that this practice stopped in 1991. In the prior custody hearing, she did not indicate he had ever pointed a weapon at her. The wife stated that her husband would become verbally abusive toward her, but except for when he pushed her off the porch, he did not physically abuse her. She stated that on occasion he got angry and punched the wall next to her. The judge, over objection, allowed the wife to testify that her son had told her:
that he had seen daddy's guns, that daddy let him hold some of them, that they used the guns to shoot the animals that are getting into the garden and eating the food, and that he also is afraid that daddy's going to hurt somebody with the guns.
The husband testified that he did not have a criminal record; was never convicted of a crime; is not presently under indictment; has never been diagnosed as drug dependent; has never been hospitalized for a mental or emotional disorder; has never experienced seizures or other convulsive disorders; and does not suffer from any physical ailment except Lyme disease.
Concerning the drill and broomstick, the husband stated that he may have left tools around the house, but that he did not attempt to booby-trap any of the doors. He also denied placing Post-It notes on the windows. He stated that he has not used any of the seized firearms since he moved to New Jersey in 1988, and that he never pointed a gun or any other weapon at his wife or anybody else, except in the line of duty while he was in the military. He agreed that in 1990, he did shoot at a rabbit in his garden with a "BB" gun; had previously used his other guns for hunting, and that he believes in the right to bear arms. He further maintained that while the guns were stored in the house, they were never loaded, and that the guns have great sentimental value to him and are his most valued possessions aside from the people that he cares about.
The judge permitted the State to admit a court-ordered custody evaluation report and two letters sent by the husband to the *457 prosecutor requesting the return of his weapons.[2] In pertinent part, the report indicated that the husband:
... may respond to rebuffs to his self esteem with a wide range of unpredictable behaviors including explosive anger, depression, anxiety and withdrawal. Although he is likely to regain his typical posture of equanimity, he may employ extreme forms of impulsive coping behaviors which may include irresponsible acting out.
The first letter appellant sent to the prosecutor, in pertinent part, stated:
If I so desired [given my background in chemistry and the military], it would be a trivial matter for me to enter any hardware store and leave with enough common materials to fabricate a highly effective firearm and ammunition to use it.
The second letter asserted:
This law [domestic violence law] like so many others is being used by women like [my wife] to punish men ... Of course you know that as a practical matter I have no legal recourse against such lies as long as they are in the context of child custody and other domestic laws which I feel clearly discriminate against men in general and fathers in particular.
A stipulation was placed on the record that the Town of Clinton Police Department did not have an objection to the return of the weapons.
At the conclusion of testimony and argument, the judge stated:
I am satisfied from testimony that this is a volatile situation ... With reference to the specific acts referred to today, I do accept [the wife's] version of events. I am satisfied that he did gerryrig out these weapons, booby traps, or what were supposed to appear as booby traps. He [was] most equivocal in his testimony about the stick-it or Post-it notes ... I am satisfied her version of events ... practicing a draw did in fact take place... The psychological evaluation speaks for itself... I've also reviewed the letters that have been submitted by the State and certainly they're not dispositive of the issue, but they're certainly not inconsistent with the psychological evaluation and are of concern. I do find under all the  and I will say that although I did permit the testimony concerning the son, that frankly, has played no part in my decision.
He then held:
Given this behavior and the volatility of the situation, I am satisfied from all the evidence that the issuance or continued possession of the firearms purchase or ID *458 card by [the husband] would not be in the interest of the public health, safety or welfare as that standard is used in N.J.S.A. 2C:58-3. I also believe that under the circumstances and pursuant to N.J.S.A. 2C:25-21, that [he] does pose a threat to his wife in these circumstances, will therefore order the forfeiture, or the revocation of his firearm purchaser's ID card. I will also direct that his weapons be forfeited.
Appellant essentially argues: (1) that there was no justification for the weapons forfeiture hearing which took place on May 25, 1995 given that the domestic violence complaint against him was dismissed; (2) that there was insufficient evidence for a prima facie showing to justify a hearing; (3) assuming arguendo that a hearing was properly held, that the court abused its discretion in ordering that appellant's weapons be forfeited and his purchaser's identification card revoked; (4) that the trial court erred by refusing to grant appellant a continuance to present two other fact witnesses; and (5) that the forfeiture of appellant's weapons without compensation represents an unconstitutional taking without due process of law.
It is clear that under N.J.S.A. 2C:25-21d(1)(b), the weapons were properly seized upon the signing of the two domestic violence complaints. In addition, N.J.S.A. 2C:25-21d(3), in part, provides:
The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.

[Emphasis Added].
Thus, it was within the discretion of the prosecutor to timely object to the return of the weapons and seek their forfeiture as was done here. It was also appropriate to hold a hearing, as the statute mandates. N.J.S.A. 2C:25-21d(3).
N.J.S.A. 2C:25-21d(3) further states:

*459 After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
[Emphasis Added].
A reported Family Part decision reflects concern as to whether the apparent limitations imposed by this provision defeat the power of the court to order forfeiture where there is a finding "that the owner poses a threat to the public in general or a person or persons in particular," but no "domestic violence" concerns remain viable. N.J.S.A. 2C:25-21d(3). In State v. Warrick, 283 N.J. Super. 169, 661 A.2d 335 (Ch.Div. 1995), there were two domestic violence complaints signed against the husband. His weapons were seized but returned over objection for lack of evidence after the first complaint was dismissed. After the second domestic violence complaint was dismissed, the prosecutor again moved for forfeiture of the weapons and a hearing was held. Id. at 171-72, 661 A.2d 335.
With regard to interpreting N.J.S.A. 2C:25-21d(3), the court stated:
Under the present circumstances, it is difficult to locate a consistent philosophy between the first and fourth paragraphs of subsection d(3). The first paragraph states that the State "may object" to the return of the weapons on a variety of grounds [including threat to public or another person in particular] ... but the fourth paragraph requires that, after the hearing, the court "shall order the return" of the weapons if any one of a number of events has occurred [domestic violence complaint withdrawn and no probable cause to indict or defendant found not guilty of the charges or domestic violence situation no longer exists].
[Id. at 175-76, 661 A.2d 335. (Emphasis Added)].
The court also observed:
According to the precise words of the statute, if any one of those three events is presented, the weapons must be returned. The weapons must be returned if the complaint is dismissed or the prosecutor finds insufficient cause to indict, even if the court finds that the "domestic violation situation" still exists or, vice versa. Is that what the Legislature intended? It is difficult to square the literal interpretation of this statute with the Legislature's stated intentions in N.J.S.A. 2C:25-18.
[Id. at 178, 661 A.2d 335].
*460 The court concluded that it did not have to "grapple" with the situation since no matter how the statute was interpreted, the results would be the same. Ibid. The court found that there was no civil or criminal complaint pending at the time of the forfeiture hearing and that there was no domestic violence situation present. Id. at 176-77, 661 A.2d 335. The court further found that based on the evidence, it could not find that the husband posed a threat to the public or any person in particular. Id. at 180, n. 6, 661 A.2d 335.
We are of the view that the statute must be interpreted so that even if there is no longer a domestic violence complaint or situation pending, or the appellant was not found guilty of criminal charges, the court is not bound to return the weapons if it is established that the owner poses a threat to the public or a person in particular. Although the later paragraph of N.J.S.A. 2C:25-21d(3) appears to conflict with the first paragraph, we believe that it is clear that the Legislature intended to authorize continued action against the weapons and permits where the burden of showing a continued public or personal danger is carried by the State. See State v. S.A., 290 N.J. Super. 240, 675 A.2d 678 (App.Div. 1996). Otherwise, it would be inappropriate to authorize the prosecutor to bring the petition on such grounds. See State v. Solomon, 262 N.J. Super. 618, 621 A.2d 559 (Ch.Div. 1993); see also Wene v. Meyner, 13 N.J. 185, 197, 98 A.2d 573 (1953) (holding "A statute should not be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of terms ..."); State v. Saavedra, 276 N.J. Super. 289, 294, 647 A.2d 1348 (App.Div. 1994); N.J.S.A. 2C:25-18.
At the time of the forfeiture hearing here, the parties no longer lived together, both domestic violence complaints had been dismissed, and no criminal charges were pending. Nonetheless, the court after a hearing found that the husband presented a "threat" to his wife and ordered that his identification card be revoked and *461 weapons forfeited. We agree that the hearing was warranted, but conclude the State failed to carry its burden of showing a continued domestic violence situation or threat to the public or any particular person.
Our appellate function is limited. Findings by the trial judge are not to be disturbed on appeal if supported by adequate, substantial and credible evidence. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). We will not disturb the factual findings of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice. Ibid.
The guns were legally acquired and have not been used in any crime. Thus, they are not prima facie contraband. To enforce forfeiture of non-prima facie contraband, the State must prove by a preponderance of the evidence that the seized property was connected to an unlawful activity which amounts to an indictable crime, connected to an intended but not yet committed offense of a similar magnitude, or otherwise constitutes a threat to the public in general or a person in particular. See State v. Seven Thousand Dollars, 136 N.J. 223, 233-34, 642 A.2d 967 (1994); N.J.S.A. 2C:25-21d(3).
Appellant is employed as a chemical engineer and supervisor. He is also a Commander in the Naval Reserves and served on active duty in Vietnam. Understandably, the local police had no objection to the return of the weapons. He does not have a criminal record; was never convicted of a crime; is not presently under indictment; has never been diagnosed as drug dependent; has never been hospitalized for a mental or emotional disorder; has never experienced seizures or other convulsive disorders; and does not suffer from any physical ailment as would prevent his safe handling of weapons. See N.J.S.A. 2C:58-3.
Nor were any weapons involved in the two domestic violence complaints which were later dismissed. The weapons and permit *462 were, in fact, returned to the husband and in his possession during the two year period while the domestic tension and divorce action were at a critical stage. It was only the "shoving match" of December 1994, that caused the weapons and permit to be taken again; and significantly, the domestic violence complaint relating to that incident was not sustained.
The forfeiture judge found only that the husband did set up the drill and broom to look like a booby-trap; that he had practiced "drawing" his gun; that the psychological report indicated he may employ extreme forms of impulsive coping behaviors which may include irresponsible acting out; and that his letters were not inconsistent with the psychological report. The psychological report, however, does not state that appellant would resort to physical violence or the use of weapons and the two letters do not indicate that he had an intent to resort to physical violence if an adverse decision were made. We perceive the letters to merely reflect his displeasure and frustration under the circumstances.
We conclude that the record fails to support the finding that the appellant poses a threat to his wife or the public in general, or that the return of his identification card would not be in the interest of the public health, safety or welfare. N.J.S.A. 2C:58-3c(5). Because there was insufficient credible evidence to support the judge's order of forfeiture, appellant's weapons and firearms identification card should be returned to him.
We reverse and remand for entry of an appropriate order.
NOTES
[1] A Final Judgment of Divorce was entered on October 23, 1995.
[2] The first letter was sent in response to the confiscation of defendant's firearms after the first domestic violence complaint in 1992, while the second was sent in response to the confiscation of the firearms after the second domestic violence complaint in 1994.