283 N.J. Super. 169 (1995)
661 A.2d 335
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIS WARRICK, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Monmouth County.
Decided March 17, 1995.
*171 Gary McLean, Assistant Prosecutor, for the State (John A. Kaye, Monmouth County Prosecutor).
Kevin E. Daniels, for defendant (Daniels & Davis-Daniels, attorneys).
FISHER, J.S.C.
This forfeiture action raises interesting questions concerning the weapons provisions of the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33, (the Act).

I

PROCEDURAL HISTORY
Ellyn Warrick (Ellyn) filed a domestic violence complaint against Willis Warrick (Willis) in the Municipal Court of the Township of Neptune on November 28, 1993 (the first complaint). She alleged that Willis endangered her life, health or well-being by "punching her in the face and throwing a hammer at her and threatening to kill her." The municipal judge entered a temporary restraining order which ordered, among other things, the seizure of a Remington shotgun and 9-MM automatic pistol (the weapons). At Ellyn's request, the Honorable Mark A. Sullivan, *172 Jr., J.S.C., entered an order on December 23, 1993, dismissing the complaint and dissolving the temporary restraining order. Thereafter, the State moved for the forfeiture of the weapons. On April 19, 1994, the Honorable Robert A. Coogan, J.S.C., ordered that the weapons be returned to Willis because the State was "unable to provide a basis for forfeiting the weapons" and was "unable to present any evidence that any disability set forth in N.J.S.A. 2C:58-3" applied to Willis.
On November 7, 1994, Ellyn filed another domestic violence complaint (the second complaint), which alleged that Willis endangered her life, health or well-being by "harassing [her] and also making sexual advances at her [and] to the point that she has to push him off and away from her." On November 28, 1994, a temporary restraining order was entered by the Honorable James F. Mulvihill, J.S.C., which, among other things, ordered another seizure of the weapons. On December 5, 1994, this court entered an order, again at Ellyn's request, dismissing the complaint and dissolving the temporary restraining order.
Two days after the second complaint was dismissed, the State again moved for forfeiture of the weapons. A hearing was held on March 9, 1995, at which time both Ellyn and Willis testified.

II

THE ISSUES
This relatively simple matter gives rise to two issues which are not easily resolved by reference to the Act. The first issue requires a determination as to how much of the prior history briefly outlined above is relevant to this forfeiture action. The second issue raises what appears to be a disturbing inconsistency between two paragraphs of N.J.S.A. 2C:25-21 d(3).

A. Is There Relevance to the Domestic Violence Allegations made Prior to the Dismissal of the First Forfeiture Action?

The State offered the testimony of Ellyn who swore to the truth of the allegations of the first complaint. Willis, who testified *173 to the contrary, argued that this evidence is not relevant to whether the weapons should be forfeited.
As a basis for the forfeiture of the weapons, the State claims only that Willis "poses a threat to the public in general or a person or persons in particular." N.J.S.A. 2C:25-21 d(3). The State argues that evidence of past domestic violence is relevant in determining whether Willis poses a threat, at the very least, to Ellyn. Willis forcefully argues that evidence of the allegations of the first complaint are irrelevant, since Ellyn voluntarily dismissed that complaint prior to the final hearing and, moreover, because Judge Coogan entered an order requiring the return of the weapons shortly thereafter. In a nutshell, Willis argues that Judge Coogan's April 19, 1994 order absolved him of any past indiscretions as a basis for a future forfeiture of the weapons.
To support its argument that the events alleged in the first complaint are relevant, the State relies upon the general purpose of the Act, i.e., "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. In that regard, it should initially be noted that there has never been a finding in either the first domestic violence case, or the second, that Ellyn was a "victim of domestic violence," since neither matter ever went to a final hearing. Each prior temporary restraining order demonstrates only the court's determination, made ex parte, that Ellyn appeared to meet the definition of "victim of domestic violence" in N.J.S.A. 2C:25-19 d, had alleged an act of domestic violence and there existed good cause to believe that her life, health or well-being were endangered. Such a preliminary finding cannot be equated with a finding that an act of domestic violence actually occurred. See n. 5, infra. But, assuming the contrary were true, there is logic to Willis' argument that Judge Coogan's April 19, 1994 order resolved, at least as of April 19, 1994, that Willis did not pose any threat to the public in general or a person, or persons, in particular.
The State has not, but may have, argued that N.J.S.A. 2C:25-29 a(1) would permit the consideration of the allegations of the first *174 complaint at this late date. That statute requires a court  at a domestic violence final hearing  to consider but not be limited to a number of factors, including "[t]he previous history of domestic violence between the plaintiff and defendant." The Legislature, no doubt recognizing the insidious nature of the cycle of domestic violence, mandated the relevance of past domestic violence between the parties for purposes of a court's determination of whether a final restraining order should be entered.
A fair reading of the Act as a whole would suggest that evidence of a prior history of domestic violence between the parties would indicate that the evidence in question may be relevant to whether Willis poses a threat to the public or a person, or persons, in particular. While the weight of this evidence may be diminished, and substantially so, by the passage of time, the fact that the complaint was voluntarily dismissed and the State's inability to prove Willis was a threat at an earlier stage, N.J.S.A. 2C:25-29 a(1) demonstrates that this evidence meets the threshold of relevance and is admissible. Evidence is relevant if it has a "tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. While the persuasiveness of the occurrence alleged in the first complaint may be limited by subsequent procedural events, it is not completely eliminated. This and other like objections raised by Willis go to the weight not the admissibility of the evidence.[1]

B. What are the Grounds for Forfeiture When There is no Pending Civil or Criminal Complaint?

The second troubling issue concerns the application of the forfeiture statute to the facts of the case. This perplexing problem *175 arises from the first and fourth paragraphs of N.J.S.A. 2C:25-21 d(3).[2] The first paragraph of that statute states:
Weapons seized in accordance with the above shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.

(Emphasis added.)
This paragraph permits the prosecutor to object to the return of the weapons on the grounds that the "owner poses a threat to the public in general or a person or persons in particular," which is precisely the State's argument in seeking a forfeiture in this case.
The fourth paragraph of subsection d(3), however, states:
After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
(Emphasis added.)
Under the present circumstances, it is difficult to locate a consistent philosophy between the first and fourth paragraphs of subsection d(3). The first paragraph states that the State "may object" to the return of the weapons on a variety of grounds (including the ground which forms the basis for the State's position herein) but the fourth paragraph requires that, after the hearing, the court *176 "shall order the return" of the weapons if any one of a number of events has occurred.
The first event which will compel a return of the weapons is when the "complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict." In State v. Solomon, 262 N.J. Super. 618, 621 A.2d 559 (Ch. Div. 1993), the court determined that this phrase refers not only to any criminal complaint that may have arisen out of the alleged domestic violence, but also includes any civil complaint filed by the victim. Making that assumption, the Solomon court concluded that a pending civil complaint would eliminate this provision as a basis for a return of weapons notwithstanding the dismissal of a criminal complaint alleging the same conduct. While that result is not easily reached upon consideration of that precise phrase,[3] or the entirety of N.J.S.A. 2C:25-21,[4] even if Solomon is accepted as an accurate statement of the law, *177 there was no civil or criminal complaint pending by the time the weapons forfeiture hearing was conducted.
The second event which compels the court to return the weapons is "if the defendant is found not guilty of the charges." Since a criminal action was never commenced against Willis, this provision is not applicable.
The third event which would compel the court to return the weapons after the hearing is "if the court determines that the domestic violence situation no longer exists." This provision is quite vague, and the Act does not define what constitutes a "domestic violence situation." Nevertheless, it is important to emphasize that while Ellyn twice filed domestic violence complaints and twice obtained temporary restraining orders, she voluntarily requested and obtained dismissals of those complaints, and the dissolution of the temporary restraining orders, shortly thereafter; neither case ever went to a final hearing. In both cases, Ellyn filed affidavits prior to the dismissal of the complaints, stating under oath that she had "reconsidered [her] relationship with the defendant." Clearly, whatever the Legislature meant when it used the phrase "domestic violence situation," each "situation" between the parties had come to an end by the time the prosecutor moved for forfeiture.[5]
*178 The problem with the State's position is that a literal reading of these paragraphs prohibits the court from forfeiting the weapons on the ground urged by the State. Paragraph four mentions a number of instances which individually compel the court to return the weapons. Paragraph one, when viewed alone, would permit the court to engage in an examination of whether the defendant is disqualified by way of N.J.S.A. 2A:58-3 from possessing the weapons and forbid the return of the weapons if defendant "poses a threat to the public in general or a person or persons in particular." Taken literally, the fourth paragraph compels the return of the weapons upon any one of three events, while the first paragraph contains only the grounds upon which the prosecutor "may object" to their return.
There are other troubling aspects to the imperfect statutory language of N.J.S.A. 2C:25-21 d(3). For example, each of the events mentioned in the fourth paragraph which would compel a return of the weapons are joined by the word "or." According to the precise words of the statute, if any one of those three events is presented, the weapons must be returned. The weapons must be returned if the complaint is dismissed or the prosecutor finds insufficient cause to indict, even if the court finds that the "domestic violence situation" still exists or, vice versa. Is that what the Legislature intended? It is difficult to square the literal interpretation of this statute with the Legislature's stated intentions in N.J.S.A. 2C:25-18. Happily, the court need not grapple with this situation since both events, on the circumstances presented, require the return of the weapons.
*179 Regardless of the troubling nature of the statute's apparent inconsistencies, it is not for this court to speculate about the Legislature's unspoken intent in seeking a common understanding of the first and fourth paragraphs of N.J.S.A. 2C:25-21 d(3). The court must apply the directives of the Legislature as written and not exalt the court's own interpretation of what would be a better or clearer statute. This court's obligation is to ascertain the "plain, reasonable, and certain expressions of intention found on the face [of the statute]," Wright v. Denn, 23 U.S. (10 Wheat) 204, 239, 6 L.Ed. 303 (1825); accord, In re Howell Tp., Monmouth County, 254 N.J. Super. 411, 419, 603 A.2d 959 (App.Div. 1991), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991), and apply it to the facts of the case.
The only fair reading of N.J.S.A. 2C:25-21 c(3) prohibits the court from assessing whether one of the grounds set forth in the first paragraph requires forfeiture if one of the events set forth in the fourth paragraph compels the return of the weapons. Viewing paragraph four of subsection d(3) against the factual backdrop of this case, it is clear that the statute's express terms compels the court to return the weapons to Willis. The Legislature did not state that the court "may" return the weapons upon any of the circumstances described in that paragraph; the Legislature stated that the court "shall" order the return of the weapons.
By employing the particular language contained in the statute and thus compelling the result reached herein, the Legislature must have sought a balance between the alleged victim's concerns and the property rights of the defendant. This court has no authority to say that the Legislature had not the right or desire to so calibrate the scale. Clearly, the Legislature possessed both. Accordingly, to give meaning to the Legislature's intent, this court holds that the existence of one or more of the events contained in the fourth paragraph of N.J.S.A. 2C:25-21 d(3) compels a return of the weapons and negates a consideration of whether the defendant *180 "poses a threat"[6] or any other disability mentioned in the first paragraph of that statute.

III

CONCLUSION
Based on the above, the court determines that (1) the allegations of a domestic violence complaint (which was voluntarily dismissed before reaching a final hearing and which preceded the dismissal of an earlier forfeiture action), may be relevant to a later forfeiture action, and (2) a finding of any one of the events contained in the fourth paragraph of N.J.S.A. 2C:25-21 d(3) compels a return of weapons seized pursuant to the Prevention of Domestic Violence Act, notwithstanding the existence of any of the disabling grounds contained in the first paragraph of that statute. Accordingly, the motion for forfeiture of the weapons is denied, and it is ordered that the weapons in question are to be returned to defendant forthwith.
NOTES
[1] Willis also argues that because there was never an allegation that these weapons were used during the course of the alleged domestic violence, they should not be subjected to forfeiture. This contention was rejected for sound reasons in Hoffman v. Union Cty. Prosecutor, 240 N.J. Super. 206, 214, 572 A.2d 1200 (Law Div. 1990).
[2] The second paragraph requires that a hearing be held within 15 days of the notice given by the prosecutor for the forfeiture of the weapons and that the hearing "shall be summary in nature." The third paragraph states that if the Prosecutor does not institute a forfeiture action within 45 days of seizure, the seized weapons are to be returned to the owner. The Appellate Division has recently dealt with this specific provision in State v. Saavedra, 276 N.J. Super. 289, 647 A.2d 1348 (App.Div. 1994).
[3] This phrase uses the word "complainant," connoting the individual who sought the issuance of a criminal complaint. If the Legislature intended the result suggested in Solomon, one would expect that the Legislature would have used the phrase "victim" instead of, or along with, "complainant". After all, the word "victim" is used throughout the Act to describe the plaintiff in a civil action. By using the word "complainant," the Legislature clearly intended that the "complaint" referred to in that phrase should be interpreted as meaning only a criminal complaint.
[4] Weapons may be seized in a domestic violence setting in two essential ways. They may be seized pursuant to subsection d(1), i.e., when the weapon is contraband, evidence or an instrumentality of a crime, or where a law enforcement officer "has probable cause to believe that an act of domestic violence has been committed." They may also be seized at the direction of the court at the time of the initial or final domestic violence hearing. N.J.S.A. 2C:25-281; N.J.S.A. 2C:25-29 b(16). Resort to the express directions of the Legislature demonstrates that a forfeiture hearing may only occur when the seizure is the result of a law enforcement officer's actions as outlined in subsection d(1). This is so because the opening phrase of subsection d(3) states that the weapons which may be subjected to the forfeiture hearing are those which were "seized in accordance with the above." (Emphasis added.) The only authorization for a seizure which appears "above" that phrase is that which is set forth in subsection d(1). The seizure in this case resulted from the entry of a temporary restraining order, not by law enforcement action pursuant to subsection d(1).
[5] The argument that any of the prior events prove anything more than Ellyn twice before alleged Willis' commission of an act of domestic violence is misguided. The argument does not improve merely because preliminary hearings took place and temporary restraining orders were entered. The entry of a temporary ex parte injunction prohibiting any further acts of domestic violence, coupled with the other many remedies the court may issue, is not evidence of the commission of an act of domestic violence. Such an interlocutory injunction is issued "to preserve the status quo in the true sense of that term...." Cooling v. Security Trust Co., 49 A.2d 121, 124 (Del.Chan. 1946) (Seitz, V.C.); it is evidence of the trial court's determination that the balancing of the "conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction," Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569, 573-74 (3d Cir.1959), and the other elements which factor into the sound exercise of judicial discretion, warrant the issuance of an injunction to preserve the status quo pending a plenary hearing. N.J. State Bar Ass'n v. Northern N.J. Mort. Assocs., 22 N.J. 184, 194, 123 A.2d 498 (1956). In essence, a temporary restraining order does not create a right but rather preserves the right from destruction during the life of the litigation. In the domestic violence setting, the emphasis at this initial stage concerns whether "plaintiff is in danger of domestic violence," N.J.S.A. 2C:25-28 g, and much less so on the likelihood of plaintiff's success on the merits, and quite rightly so. In acknowledging this as the nature of the process at that early stage, the entry of a temporary restraining order is hardly to be equated with a finding that an act of domestic violence in fact occurred.
[6] It should also be observed that even if the factors set forth in the first paragraph of subsection d(3) could be indulged, notwithstanding the fourth paragraph, the result would be the same. To support the State's argument that Willis poses a threat, Ellyn testified that the allegations of her domestic violence complaint were true (and was no more specific than that) and, after a long pause when questioned by the prosecutor, she grudgingly admitted that she only felt in "slight fear" of Willis. Assuming this factual dispute was reached, the court would not find that Willis posed a threat to the public or any person in particular.