291 N.J. Super. 401 (1996)
677 A.2d 780
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES VOLPINI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1996.
Decided June 18, 1996.
*402 Before Judges PETRELLA and P.G. LEVY.
Barry J. Serebnick, Assistant Prosecutor, argued the cause for appellant (John Kaye, Monmouth County Prosecutor, attorney; Mr. Serebnick, of counsel and on the brief).
Barry H. Shapiro argued the cause for respondent.
*403 PER CURIAM.
The State appeals from an order dismissing its application for a forfeiture hearing regarding certain firearms seized from defendant Charles Volpini. The application, made pursuant to the Prevention of Domestic Violence Act of 1991(Act), see N.J.S.A. 2C:25-21d(3), was denied by the Family Part Judge on the ground that the court lacked jurisdiction because an underlying domestic violence complaint had been dismissed. In addition, the judge concluded that relief was not warranted because the State had neither produced a subpoenaed, material witness (Mrs. Volpini) to testify at the forfeiture hearing nor complied with the fifteen-day hearing requirement of N.J.S.A. 2C:25-21d(3). On appeal, the State argues that the judge erred in declining to hear the State's timely filed weapons forfeiture application and in ordering the immediate return of defendant's weapons.

I.
The events leading up to the forfeiture application commenced on February 26, 1995, when Manalapan Township police responded to a domestic violence call made by Mr. Volpini's wife from the couple's home. She claimed that her husband had physically assaulted her, which was partially corroborated by a bruise on her left cheek. Although Mrs. Volpini refused to file a complaint or seek a temporary restraining order (TRO) against her husband, a police officer arrested Mr. Volpini for simple assault and seized his Browning 12-gauge shotgun, his Marlin .22 caliber rifle, and a bag of ammunition.
Mrs. Volpini went to the police department the following day to report that her husband had since telephoned her six times at her place of employment, threatening to kill her and their son "if he did not straighten out his problem and get his guns back." She indicated that her husband had been undergoing psychiatric treatment and taking medication for depression. These charges resulted *404 in Mr. Volpini's arrest on a charge of terroristic threats.[1] In addition, Mrs. Volpini signed a domestic violence complaint against her husband.
Upon issuance of an ex parte TRO pursuant to her complaint, Mr. Volpini was notified to appear for a final hearing on his wife's application for restraints. The TRO directed him to turn over to the police a Ruger .357 Magnum handgun and "possibly one rifle." The police seized from the Volpini home the handgun, a Remington .308 caliber rifle, and another bag of ammunition. At a March 7, 1995 final hearing, the domestic violence complaint was dismissed after Mrs. Volpini had requested its withdrawal; the TRO was also vacated.
The Monmouth County Prosecutor moved the next day for forfeiture of Mr. Volpini's weapons and revocation of his weapons permits and licenses. The motion was filed within "45 days of seizure," as required by the first unnumbered paragraph of N.J.S.A. 2C:25-21(d)(3), but was not calendared for argument until May 25, 1995. The State's application was twice adjourned at Mr. Volpini's request. The State then sought the adjournment of a September 14, 1995 hearing because Mrs. Volpini failed to appear. The prosecutor maintained that the State had mailed a subpoena to her and "had anticipated calling her as a hostile witness." The State was nonetheless prepared to examine the two police officers who had answered the original domestic violence call.
At a September 21, 1995 proceeding, the State sought another adjournment because it had been unable to personally serve Mrs. Volpini with a second subpoena. Mr. Volpini advised the police officers who had attempted to serve the subpoena that his wife had left the jurisdiction. The State informed the judge that it was nevertheless prepared to proceed with its case in her absence. *405 The judge questioned, however, whether he had jurisdiction to hear the motion because Mrs. Volpini's domestic violence complaint had been dismissed. He relied upon the decision in State v. Warrick, 283 N.J. Super. 169, 661 A.2d 335 (Ch.Div. 1995), which held that a weapons forfeiture action may not proceed if the domestic violence complaint upon which the motion is based has been dismissed. Mr. Volpini's defense was equally predicated upon the State's failure to produce the testimony of the complaining witness and to hold the forfeiture hearing within fifteen days of the State's notification of the defendant of its intention to seek forfeiture. Concluding that the mandatory language of the fourth unnumbered paragraph of N.J.S.A. 2C:25-21d(3) denied the court jurisdiction, the judge dismissed the motion and ordered the return of the defendant's weapons upon finding that each of the aforementioned arguments was fatal to the State's cause.

II.
N.J.S.A. 2C:25-21d(3), the statute at issue in the instant appeal, states:
Weapons seized in accordance with the above[2] shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within 45 days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.
A hearing shall be held and a record made thereof within 15 days of the notice provided above.... The hearing shall be summary in nature. Appeals from the results of the hearing shall be to the Superior Court, Appellate Division, in accordance with the law.

*406 If the prosecutor does not institute an action within 45 days of seizure, the seized weapons shall be returned to the owner.
After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
Nothing in this act shall impair the right of the State to retain evidence pending a criminal prosecution. Nor shall any provision of this act be construed to limit the authority of the State or a law enforcement officer to seize, retain or forfeit property pursuant to chapter 64 of Title 2C of the New Jersey Statutes.
* * * * * * * *
In State v. Warrick, supra, 283 N.J. Super. 169, 661 A.2d 335, the Family Part considered the relationship of the component parts of N.J.S.A. 2C:25-21d(3). On two occasions, Mrs. Warrick had filed domestic violence complaints and obtained orders compelling the seizure of her husband's weapons. Id. at 171-172, 661 A.2d 335. The State unsuccessfully moved both times for forfeiture of those weapons despite the fact that the complaints were dismissed at the complainant's request. Id. at 171-172, 180, 661 A.2d 335.
The State's second forfeiture motion was premised upon the classification of Mr. Warrick as one who "`poses a threat to the public in general or a person or persons in particular.'" Id. at 173, 661 A.2d 335; see N.J.S.A. 2C:25-21d(3). However, the motion judge in Warrick found it "difficult to locate a consistent philosophy between [the provisions of the first and fourth unnumbered paragraphs of N.J.S.A. 2C:25-21d(3)]." Id. at 175, 661 A.2d 335. Whereas the first paragraph empowers a prosecutor to object to the return of weapons, the judge explained that the fourth paragraph declares that a court, upon hearing, "`shall order the return' of the weapons if any one of a number of events has occurred." Id. at 175-176, 661 A.2d 335.
Warrick concluded that the mandatory duty imposed upon the court by the fourth paragraph overrode the permissive authority to seek forfeiture granted to the prosecutor by the first paragraph. Reasoning that he was obligated to order the return of *407 Mr. Warrick's weapons if any of three circumstances set forth in the fourth paragraph existed,[3] the judge denied the State's motion on the ground that the occurrence of the first and third circumstances "negate[d][any] consideration of whether [Warrick] `poses a threat'[] or any other disability mentioned in the first paragraph of [N.J.S.A. 2C:25-21d(3)]." Id. at 179-180, 661 A.2d 335 (footnote omitted).
Resolution of the apparent internal inconsistency analyzed in Warrick necessitates our discernment of legislative intent respecting N.J.S.A. 2C:25-21d(3), taking into account the policy underlying the Act. T.S.R. v. J.C., 288 N.J. Super. 48, 53, 671 A.2d 1068 (App.Div. 1996); Carfagno v. Carfagno, 288 N.J. Super. 424, 435, 672 A.2d 751 (Ch.Div. 1995). In this regard, our function is twofold: "to `effectuate the legislative intent in light of the language used and the objects sought to be achieved,' ... and to construe [the Act] in a fashion consistent with the statutory context in which it appears...." In re Rehabilitation of Mut. Ben. Life Ins. Co., 258 N.J. Super. 356, 375, 609 A.2d 768 (App.Div. 1992) (citations and internal citations omitted); see Fiore v. Consol. Freightways, 140 N.J. 452, 466, 659 A.2d 436 (1995) ("Our task is to harmonize the individual sections and read the statute in the way that is most consistent with the overall legislative intent."). "When a statute includes provisions which appear inconsistent," we have looked to the purpose of the act as a guide for our ascertainment of the underlying legislative intent. T.S.R. v. J.C., supra, 288 N.J. Super. at 54, 671 A.2d 1068.
Within another domestic violence context, we have undertaken a pragmatic approach in construing N.J.S.A. 2C:25-21d(3):

*408 A statute should not be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of the terms; the obvious policy is an implied limitation on the sense of the general terms, and a touchstone for the expansion of narrower terms.
[State v. Saavedra, 276 N.J. Super. 289, 294, 647 A.2d 1348 (App.Div. 1994) (quoting Wene v. Meyner, 13 N.J. 185, 197, 98 A.2d 573 (1953)); see T.S.R. v. J.C., supra, 288 N.J. Super. at 54, 671 A.2d 1068 (quoting State v. A.N.J., 98 N.J. 421, 424, 487 A.2d 324 (1985) ("We also must seek an interpretation that will `make the most consistent whole of the statute.'"))].
In other words, our construction of the Act "`justly turn[s] on the breadth of the objectives of the legislation and the common sense of the situation. The spirit of the legislative direction prevails over its terms.'" Sun Co., Inc. v. Zoning Bd. of Adj. of Boro. of Avalon, 286 N.J. Super. 440, 445, 669 A.2d 833 (App.Div. 1996) (quoting New Jersey Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 339, 288 A.2d 855 (1972)); see Fulginiti v. Cape May County Sheriff's Dep't, 199 N.J. Super. 56, 65, 488 A.2d 250 (App.Div.), certif. denied & remanded, 102 N.J. 309, 508 A.2d 193 (1985) ("In our search to discover the legislative intent, the statute must be read in light of the prior law, the mischief sought to be eliminated and the proposed remedy."). To avoid an outcome here that is at odds with the legislative intent of the Act, we strive to read its various sections as "cohesively and harmoniously" as possible. Woodcock v. Calabrese, 148 N.J. Super. 526, 535, 372 A.2d 1178 (Dist. Ct. 1977).
The Legislature has expressed the purpose of the Act in clear and unmistakable terms.[4]See N.J.S.A. 2C:25-18. Simply put, "[t]he policy of the Act is to provide broad protection for the *409 victim" of domestic violence.[5]Carfagno v. Carfagno, supra, 288 N.J. Super. at 436, 672 A.2d 751 (citing N.J.S.A. 2C:25-18); see State v. Saavedra, supra, 276 N.J. Super. at 292, 647 A.2d 1348, ("Protection of the victim was the clear and unequivocal message."). Our interpretation of the Act has been guided by this overriding goal.
*410 In State v. Saavedra, supra, 276 N.J. Super. 289, 647 A.2d 1348, for example, we upheld the denial of a motion to dismiss a forfeiture proceeding in order to allow the Family Part to reach the merits of the State's motion. Following the filing of a domestic violence complaint and the issuance of a TRO against him, local police had confiscated Saavedra's 9 MM Berretta. The State did not move for forfeiture under N.J.S.A. 2C:25-21d(3) until 150 days after the seizure, however, even though the complainant had also signed a contempt complaint against the defendant for violation of a restraining order. Despite the State's nonadherence to the 45-day hearing requirement imposed by the third unnumbered paragraph of N.J.S.A. 2C:25-21d(3), the judge denied the defendant's motion to dismiss. 276 N.J. Super. at 291, 647 A.2d 1348.
We decided in Saavedra that the police had ignored the "statutory command" of N.J.S.A. 2C:25-21d(3) by withholding the seized weapon in conformity with a Family Part order instead of forwarding it to the prosecutor. In our view, however, the statutory window for seeking forfeiture "presuppose[d] that the prosecutor has possession of the seized weapon." 276 N.J. Super. at 293, 647 A.2d 1348. The prosecutor was thus not held to the statutory timetable because he did not possess the weapon. Id. at 293-294, 647 A.2d 1348. The principle of statutory construction underlying Saavedra is that "`where a literal rendering of a statute will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter.'" State v. Tekel, 281 N.J. Super. 502, 506, 658 A.2d 1281 (App.Div. 1995) (quoting New Jersey Builders, Owners & Managers Ass'n v. Blair, supra, 60 N.J. at 338, 288 A.2d 855).
The State argues that the motion judge's decision here was based upon a "narrow interpretation" of jurisdiction that "is contrary to the intent of the Legislature" to afford maximum protection to victims of domestic violence by empowering law enforcement to seize weapons in situations giving rise to a reasonable belief that such firearms pose a serious risk of harm. See *411 N.J.S.A. 2C:25-21d(1). The State asserts that subjecting the exercise of prosecutorial authority to a victim's decision to seek dismissal of a filed domestic violence complaint would defeat that legislative purpose.
Defendant contends that he qualifies for the return of his weapons under each of the three alternative circumstances identified in the fourth paragraph of N.J.S.A. 2C:25-21d(3). First, his wife sought and obtained the dismissal of the complaint and the TRO entered against him. Second, the municipal court complaint was dismissed. Finally, no court has found that he committed an act of domestic violence. In light of the purportedly unambiguous language of the fourth paragraph of N.J.S.A. 2C:25-21d(3), Mr. Volpini insists that the State is obligated to return his weapons.
The most appropriate construction of N.J.S.A. 2C:25-21d(3) is one harmonizing apparent conflicts between and among its component parts in advancement of the Act's overriding purpose. See Woodcock v. Calabrese, supra, 148 N.J. Super. at 535, 372 A.2d 1178. The Legislature has left little doubt as to that "useful and consistent purpose," State v. Vonderfecht, 284 N.J. Super. 555, 559, 665 A.2d 1145 (App.Div. 1995): "to assure the victims of domestic violence the maximum protection from abuse the law can provide," N.J.S.A. 2C:25-18 (emphasis supplied). See State v. Saavedra, supra, 276 N.J. Super. at 292, 647 A.2d 1348; Carfagno v. Carfagno, supra, 288 N.J. Super. at 436, 672 A.2d 751. Therefore, we reject any statutory construction that would defeat this purpose. See, e.g., State v. Saavedra, supra, 276 N.J. Super. at 294, 647 A.2d 1348 (refusing to order return of seized weapons in context of unresolved domestic violence complaint despite claimed prosecutorial violation of 45-day deadline for filing of forfeiture petition).
It is obvious that the Legislature went to great lengths in N.J.S.A. 2C:25-18 to identify domestic violence as "a serious crime against society" that demands for its victims "maximum protection from abuse." To offer such protection, the Legislature has codified in the Act certain remedies, of which the prosecutorial power *412 to petition for forfeiture of seized weapons is one and for which the Legislature has directed "broad application" throughout the judicial system. N.J.S.A. 2C:25-18. The investment of the power to petition in the prosecutor "[was] not a legislative accident." State v. Saavedra, supra, 276 N.J. Super. at 294, 647 A.2d 1348.
As the chief law enforcement official in the county,... the prosecutor is in the best position to assure even-handed approaches to the disposition of seized weapons and to present consistent positions to the court in summary hearings held in connection with forfeitures. It would not be surprising to find, for example, that in the zealous enforcement of this Act, there will be weapons seized out of a heightened sense of caution, erring on the side of safety rather than running the risk of being sorry. Again, the prosecutor, through a trained staff, would be able to recognize and discern these situations and deal with them in a responsible way, never losing sight of the primary objective of the act  protection of the victim.
[Id. at 294-295, 647 A.2d 1348 (citing N.J.S.A. 2C:25-21d(3) and N.J.S.A. 2C:25-20)].
The motion judge erred here because he improvidently placed the discretion over the exercise of prosecutorial authority in the hands of an alleged victim of domestic violence in contravention of the spirit of "maximum protection" controlling the letter of the Act. See Sun Co., Inc. v. Zoning Bd. of Adj. of Boro. of Avalon, supra, 286 N.J. Super. at 445, 669 A.2d 833; cf. State v. Solomon, 262 N.J. Super. 618, 623, 621 A.2d 559 (Ch.Div. 1993) (rejecting defense contention that Legislature had intended the term "complaint" in first enunciated circumstance of fourth paragraph of N.J.S.A. 2C:25-21d(3) to refer to "criminal complaint" on ground that victim would then have been exercising prosecutorial authority to dismiss criminal charges). To mandate the return of weapons either because the domestic violence complaint has been withdrawn or because, for example, the parties have specifically requested their return, would inhibit the Act's "maximum protection" by precluding a prosecutor from questioning a defendant's fitness to possess them in light of the qualifying circumstances provided for in the first paragraph of N.J.S.A. 2C:25-21d(3). See In re Rehabilitation of Mut. Ben. Life Ins. Co., supra, 258 N.J. Super. at 375, 609 A.2d 768 (citing Juzek v. Hackensack Water Co., 48 N.J. 302, 314-315, 225 A.2d 335 (1966)) ("[A] grant of power is always accompanied by implied authority that is fairly *413 and reasonably necessary for the effective exercise of that power.").
As was the case in Saavedra, strict adherence here to the mandatory tenor of the fourth paragraph has "yield[ed] results that are wholly inconsistent with the statutory scheme...." Kemp by Wright v. State, 286 N.J. Super. 549, 557, 670 A.2d 31 (App.Div. 1996). Such inconsistency was demonstrated in State v. Warrick, supra, 283 N.J. Super. 169, 661 A.2d 335, to the extent that the court there held that the mandatory language of the fourth paragraph of N.J.S.A. 2C:25-21d(3) delimits the prosecutorial authority granted by the section's first paragraph. The Warrick approach unduly circumscribes the authority conferred in furtherance of the Act's expressed purpose because it precludes the Family Part from making a clear determination before weapons are ordered returned that their recipient does not pose a threat to another person or to the general public. This determination may only be made following a hearing on the merits of a forfeiture motion. Therefore, we overrule Warrick insofar as its interpretation of the component parts of N.J.S.A. 2C:25-21d(3) requires dismissal of a forfeiture application based upon the prior withdrawal of a domestic violence complaint.
We are mindful of the fact that the Act has also been misused with alarming frequency these days as a means of obtaining undue advantage in matrimonial litigation and of resolving disputes that mature adults should be able to reasonably address without violence. Even so, none of the findings necessary for the return of seized weapons under the Act may be articulated except by a truth-seeking hearing.[6] The Legislature has recognized this reality by enacting a process designed to promptly and fairly adjudicate petitions for forfeiture.
*414 The first paragraph of N.J.S.A. 2C:25-21d(3) requires the prosecutor, upon notice to the owner, to petition the court for forfeiture within 45 days of his receipt of the seized weapons. State v. Saavedra, supra, 276 N.J. Super. at 294, 647 A.2d 1348. The prosecutor is authorized to object to the return of weapons "on grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular." N.J.S.A. 2C:25-21d(3). The second paragraph of N.J.S.A. 2C:25-21d(3) mandates that a summary hearing must be held within 15 days of the notification in order to dispose of the State's petition. This relatively straightforward process enables our courts to weigh the merits of the exercise of the prosecutorial petition power and of the recovery of seized weapons.
In the present matter, the form order dismissing Mrs. Volpini's domestic violence complaint recited that the court "ha[d] received an affidavit in support of ... withdrawal and heard testimony of the plaintiff," from which it found that Mrs. Volpini (1) had not been coerced to withdraw the complaint; (2) "understands the cycle of domestic violence" as well as "its probable reoccurrence"; (3) knows of available protective resources; (4) appreciates that "withdrawal of the complaint and dismissal of the TRO will eliminate the protections that had been issued"; (5) recognizes that withdrawal is not prejudicial to future applications if needed; and, (6) made an informed request for withdrawal. Obviously, the withdrawal of Mrs. Volpini's complaint did not mean that the domestic violence situation had been resolved, although hopefully it was.
To ensure "maximum protection" for a potential victim of domestic violence through the "broad application" of the prosecutorial power, we conclude that the motion judge should have considered the merits of the State's forfeiture petition before ordering the return of any seized weapons or permits to Mr. Volpini. In re Return of Weapons of J.W.D., 290 N.J. Super. 451, 676 A.2d 138, 141 (App.Div. 1996) The approach outlined herein will advance the Act's protective purpose by preserving the full scope of the *415 remedial power to petition for forfeiture under the first paragraph, while applying the plain language of the fourth paragraph directing our courts to order the return of seized weapons and permits "[a]fter the hearing" if one of three alternative circumstances specified therein exists. Consequently, we hold that the Act affords the Family Part jurisdiction to consider at the summary hearing contemplated by N.J.S.A. 2C:25-21d(3) the merits of the State's contention that the defendant posed a threat to public health and safety. The motion judge thus erred in refusing to hear the State's motion for forfeiture of the defendant's weapons, and a remand is required for that purpose.

III.
Even though the aforementioned process did not proceed in strict compliance with the schedule fixed by the Legislature, the defendant was still not entitled to the automatic return of his weapons in light of the importance of obtaining a final determination as to his qualifications to reclaim those weapons.
The motion judge denied the State's forfeiture motion after he had refused to grant a second adjournment to the State necessitated by its inability to produce Mrs. Volpini to testify despite having subpoenaed her.
The granting of an adjournment is discretionary with the trial court; an appellate tribunal may reverse a denial thereof only if the judicial action was "clearly unreasonable in light of the accompanying and surrounding circumstances" and "resulted prejudicially to the rights of the party complaining."
[Stott v. Greengos, 95 N.J. Super. 96, 100, 230 A.2d 154 (App.Div. 1967) (citations omitted)].
In Pepe v. Urban, 11 N.J. Super. 385, 388-389, 78 A.2d 406 (App.Div. 1951), for example, we reversed the denial of an adjournment to a plaintiff, who had sought to obtain the attendance of a witness, because the court's action deprived the plaintiff of an opportunity to present her case.
Under the circumstances here, the denial of the State's motion for an adjournment was an improper basis upon which to deprive the State of an opportunity to present its forfeiture *416 petition at a hearing. "We must never forget that courts exist for the sole purpose of rendering justice according to law." Id. at 389, 78 A.2d 406. By refusing to adjourn the hearing in order to allow the State to compel Mrs. Volpini's presence, however, the motion judge prejudiced the State's right to adduce evidence that would have enabled the court to determine Mr. Volpini's qualifications to reclaim the weapons seized from him. Therefore, the motion judge inappropriately ordered the return of the defendant's weapons without first evaluating the merits of the State's petition through the presentation of Mrs. Volpini's testimony.
As noted, the motion judge also relied upon the violation of the 15-day hearing requirement of the second paragraph of N.J.S.A. 2C:25-21d(3). According to its forfeiture motion, the hearing on the State's petition was scheduled for May 25, 1995, which was well in excess of that deadline regardless of the three adjournments that were granted in this matter. The prosecutor indicated, however, that the State had moved as expeditiously as possible given the constraints of crowded court dockets and limited court schedules that our present system imposes.
"The law assists those who are vigilant, not those who sleep upon their rights." Fox v. Township of Haddon, 137 N.J. Eq. 394, 399, 45 A.2d 193 (Ch. 1945). There is no evidence here that the State slept on its rights or that "the delay has resulted in prejudice to [an] innocent party." State by Comm. of Trans. v. Weiswasser, 287 N.J. Super. 287, 300, 671 A.2d 121 (App.Div. 1996) (citing Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 152, 153, 447 A.2d 516 (1982)). The Legislature is certainly cognizant of the fact that the calendars of our courts are busy ones. Accordingly, the State will not be penalized for its inability to obtain an earlier hearing date on its petition for forfeiture.
The order denying the motion for forfeiture is reversed. The matter is remanded to the Family Part for a plenary hearing in accordance with this opinion.
NOTES
[1] On April 29, 1995, this charge was administratively downgraded to a charge of harassment and returned to municipal court, where it was ultimately dismissed.
[2] This refers to the seizure of weapons by a "a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed...." N.J.S.A. 2C:25-21d(1). Seized weapons must be deposited with a prosecutor. N.J.S.A. 2C:25-21d(2).
[3] There are three disjunctive circumstances calling for the return of weapons enunciated in the fourth paragraph of N.J.S.A. 2C:25-21d(3). The paragraph requires the return of weapons either (1) when the "complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict"; (2) when "the defendant is found not guilty of the charges"; or (3) when "the court determines that the domestic violence situation no longer exists." State v. Warrick, supra, 283 N.J. Super. at 176-177, 661 A.2d 335.
[4] N.J.S.A. 2C:25-18 codifies the legislative raison d'etre in the following terms:

The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.
* * * * * * * *
The Legislature further finds and declares that even though many of the existing criminal statutes are applicable to acts of domestic violence, previous societal attitudes concerning domestic violence have affected the response of our law enforcement and judicial systems, resulting in these acts receiving different treatment from similar crimes when they occur in a domestic context. The Legislature finds that battered adults presently experience substantial difficulty in gaining access to protection from the judicial system, particularly due to that system's inability to generate a prompt response in an emergency situation.
It is the intent of the Legislature to stress that the primary duty of a law enforcement officer when responding to a domestic violence call is to enforce the laws allegedly violated and to protect the victim. Further, it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public. To that end, the Legislature encourages the training of all police and judicial personnel in the procedures and enforcement of this act, and about the social and psychological context in which domestic violence occurs; and it further encourages the broad application of the remedies available under this act in the civil and criminal courts of this State. It is further intended that the official response to domestic violence shall communicate the attitude that violent behavior will not be excused or tolerated, and shall make clear the fact that the existing criminal laws and civil remedies created under this act will be enforced without regard to the fact that the violence grows out of a domestic situation. [Emphasis supplied].
[5] The Act defines a "victim of domestic violence" as "a person protected under this act ... who has been subjected to domestic violence by a spouse...." N.J.S.A. 2C:25-19d. "Domestic violence" includes a panoply of "acts inflicted upon a person protected under this act by an adult," N.J.S.A. 2C:25-19a, including assault, see N.J.S.A. 2C:25-19a(2), terroristic threats, see N.J.S.A. 2C:25-19a(3), and harassment, see N.J.S.A. 2C:25-19a(13).
[6] Of course, our courts are imbued with no mystical power to unfailingly discern which, if any, conflicting versions of the truth are correct. As former Vice-Chancellor Jayne said, "Truth is sometimes lost through too much disputation." Kelly v. Kelly, 135 N.J. Eq. 75, 76, 37 A.2d 288 (Prerog.Ct. 1944).