# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3180-17T4

IN THE MATTER OF WEAPONS
SEIZED PURSUANT TO THE
PREVENTION OF DOMESTIC
VIOLENCE ACT FROM J.C.H.

Submitted April 3, 2019 – Decided May 13, 2019

Before Judges Koblitz and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FO-21-0180-17.

Richard T. Burke, Warren County Prosecutor, attorney for appellant State of New Jersey (Kelly Anne Shelton, Assistant Prosecutor, of counsel and on the briefs; Carolynn C. O'Dell, Assistant Prosecutor, on the briefs).

Benner, Trovato & Bender, attorneys for respondent J.C.H. (Paul J. Bender, on the brief).

PER CURIAM

In this matter, we consider the State's appeal from the March 13, 2018 order denying its motion for forfeiture of J.C.H.'s (Josh) [1] firearms and Firearms Purchaser Identification card (FPIC) seized from his home following the grant of a temporary restraining order (TRO) against him. Because we conclude the State satisfied its burden under N.J.S.A. 2C:58–3(c) in demonstrating Josh is a habitual drunkard and unfit to possess weapons, we reverse.

In May 2017, Josh's wife, Grace, was granted a TRO against Josh in which she alleged assault as the predicate act of domestic violence. In the TRO, Grace described nine prior incidents of domestic violence, including threats to kill her and physical violence. As required by the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25–17 to –35, the police seized thirty-four firearms from Josh's residence and his FPIC, and transferred them to the Warren County Prosecutor's Office. Grace later dismissed the TRO.[2]

As a result of the TRO, Josh, a police officer, was placed on administrative leave by his employer. Before Josh could be cleared to return to work, he was

---

[1] We use initials and pseudonyms to protect the identity of the parties. R. 1:38-3(c)(12).

[2] Josh filed a cross-complaint against Grace alleging harassment. He also dismissed that TRO.

A-3180-17T4

required to undergo a Fitness for Duty (FFD)[3] examination. Josh was previously subjected to an FFD in 2013, following Grace's social media posting that he had "issues with control, anger, alcohol, and suicidal ideation." Although the examiner found Josh was fit for duty at that time, Josh was encouraged to seek marital counseling. The report stated further, "any future police response with respect to [Josh's] marital relationship should be taken seriously and his fitness status at that point should be reconsidered." Therefore, this marital incident triggered another FFD.

Without waiting for the results of the FFD examination, the Police Chief permitted Josh to return to full duty in late May. Both examining doctors testified at the forfeiture hearing that Josh had not been cleared for full duty and their report on his fitness for duty had not yet been completed when the Chief reinstated him.

On June 5, 2017, police officers responded to a 911 call at Josh and Grace's home. A "visibly upset" Grace answered the door with an icepack on her head, and told the officers she had an "altercation" with Josh. She stated that Josh, after taking prescription medication and consuming a bottle of liquor,

---

[3] An FFD is conducted to determine whether a police officer is psychologically or physically able to carry out his or her duties.

put a firearm to his head and threatened to take his own life. Grace's struggle with Josh for the firearm had left bruising on her arm. When Josh tried to leave the house in his car, Grace attempted to stop him by holding onto the car but she was thrown off the vehicle and fell onto the pavement, bumping her head and scraping her knee. Grace did not request a TRO.

Because Grace was concerned Josh might be suicidal, area law enforcement officials were instructed to keep a "lookout" for him. Josh was eventually located in upstate New York, where he was taken to a hospital for evaluation and later released.

Josh was subsequently charged with assault by auto, N.J.S.A. 2C:12–1(c)(1), and simple assault, N.J.S.A. 2C:12–1(a)(1). After Grace refused to testify, the charges were dismissed.

Following the June events, Josh was placed on administrative leave. The details regarding the incident were provided to the FFD examiners for consideration in their report. On August 25, 2017, the examining doctors released their report, concluding Josh was not fit for duty because he "evidence[d] a psychological condition or impairment that would likely interfere with his ability to effectively function as a [p]olice [o]fficer." The examining

4

psychologist testified at the forfeiture hearing that "the finding of unfit for duty implies that . . . there should not be [access to] guns."

In support of their conclusion, the doctors described Josh's marital problems, his symptoms of depression and anxiety, his proneness to anger, "[his] prescribed mood stabilizing psychotropic medication," and his alcohol consumption, which occurred "two to three times per week [with] usually three to [ten] drinks per occasion." The doctors had spoken with Josh's treating psychiatrist regarding his treatment and medication.[4] They had also interviewed Grace, who stated she "[did] not have any reservations about [Josh] carrying a weapon."

The State filed a petition for the forfeiture of the seized weapons pursuant to N.J.S.A. 2C:25–21(d)(3), alleging Josh was unfit and posed a threat to the public, and it was "not in the interest of the public health, safety or welfare for [him] . . . to possess weapons." During the subsequent hearings, the State presented the Chief of Police, several officers, the FFD psychologists, Grace, and several other witnesses. Josh presented a psychologist as his expert witness.

---

[4] To manage Josh's "anger issues," the psychiatrist had prescribed a medication used to treat bipolar disorder and schizophrenia, and a mood stabilizer.

Josh's expert testified as to the psychological examinations he conducted in January 2018. He found Josh had "a long history of alcohol abuse"; he was "alcohol dependent"; Josh met the "diagnostic criteria for Generalized Anxiety Disorder"; and he was "still at risk for difficulties with alcohol if he [chose] to use it [at] any level." The doctor noted there were indications that Josh "experiences some struggle with anger issues which [are] greatly exacerbated" when he drinks alcohol. The expert also advised Josh had maintained his sobriety since June 2017, and "continued to participate in both individual and marital counseling with [his psychiatrist]." He concluded that Josh was "at a low risk for future violence and acting out behavior, provided he maintain[ed] his sobriety" and counseling.

In his February 18, 2018 oral decision, the trial judge determined Josh was not "presently a[] habitual drunkard" as required under N.J.S.A. 2C:58–3(c) for a declaration of unfitness. Although he noted the evidence demonstrated Josh had a history of excessive drinking, he stated Josh did not drink on the job, he had maintained his sobriety since June 2017, and he was receiving psychiatric counseling. Therefore, the judge stated, "[Josh's] behavior for the last nine

A-3180-17T4

months is indicative of someone who is not a habitual drunkard."[5]  The judge concluded that the "State[] failed to prove that returning [Josh's] weapons and [FPIC] would not be in the interest of the public health, safety, or welfare." Following the denial of the State's petition for forfeiture, the State was ordered to return the firearms and FPIC.[6]

On appeal, the State contends the trial judge erred in its finding that Josh was not a habitual drunkard and in the subsequent denial of its forfeiture petition.

In reviewing a trial court's decision on firearm forfeiture, we owe no deference to the trial court's legal conclusions, but must uphold factual findings supported by substantial credible evidence.  In re J.W.D., 149 N.J. 108, 116-17 (1997).  "Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Id. at 117 (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).  However, "[w]here the issue to be decided is an 'alleged error in the trial judge's evaluation

---

[5]  Josh's expert testified in January 2018 that he had examined Josh earlier that month. During that examination, Josh informed the expert he was working with an alcohol counsellor and he had been sober since the June incident. He, therefore, had been sober for seven months.

[6]  That order was entered March 13, 2018.  The trial judge stayed the order pending appeal.

of the underlying facts and the implications to be drawn therefrom,' we expand the scope of our review." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)). A trial court's determination is subject to greater scrutiny when it fails to assess witnesses' credibility. See In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 515 (2016) (reversing Family Part's order returning seized weapons where court failed to assess expert witnesses' credibility).

The seizure of weapons and firearm permits, authorized by N.J.S.A. 2C:25–21(d), supports the PDVA's policy to protect domestic abuse victims. See State v. Cassidy, 179 N.J. 150, 163–64 (2004); State v. Volpini, 291 N.J. Super. 401, 408–09 (App. Div. 1996). After the taking, the State may petition the Family Part for a hearing to obtain title to the weapons and revoke the permits, or object to the return of the weapons, "on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular." N.J.S.A. 2C:25–21(d)(3). The State carries the burden of proof to show "by a preponderance of the evidence, that forfeiture is legally warranted." State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004); N.J.S.A. 2C:25–21(d)(3).

The trial court must order the return of the seized weapons and firearm permits if it

> determines the owner is not subject to any of the disabilities set forth in N.J.S.[A.] 2C:58–3[(c)] and finds that the complaint has been dismissed at request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
>
> [N.J.S.A. 2C:25–21(d)(3).]

Therefore, even if the TRO has been dismissed, weapons and firearm permits can still be forfeited if the court determines the owner is unfit under N.J.S.A. 2C:58–3(c).

We turn, then, to N.J.S.A. 2C:58–3(c) to begin our analysis. The statute provides that an owner of seized weapons is deemed unfit if he or she is subject to any one of nine listed disabilities. The State contends Josh was prevented from possessing firearms under the following portions of the statute:

> (2) . . . [A]ny person who is presently an habitual drunkard;
>
> (3) . . . [A]ny person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, . . . any person who has ever been confined for a mental disorder, or . . . any alcoholic. . .
>
> . . . .

(5) . . . [A]ny person where the issuance would not be in the interest of the public health, safety or welfare.

[N.J.S.A. 2C:58–3(c).]

In light of the uncontroverted evidence regarding Josh's long history of excessive drinking presented by both the State's witnesses and Josh's own expert psychologist, we are compelled to conclude the trial judge erred in his finding that Josh's declaration of sobriety during the seven-month span of the forfeiture proceedings negated a finding of "habitual drunkard" under N.J.S.A. 2C:58–3(c).

Josh has a long history with alcohol. His expert testified that Josh began drinking in high school. He stated that Josh was consuming excessive amounts of alcohol on a regular basis for many years, resulting in his classification as alcohol dependent. During the 2017 FFD examination, Josh divulged he consumed three to ten alcoholic drinks a day three times a week, and even admitted to consuming eighteen drinks in a single day. The expert further reported that Josh said he had consumed a "bottle of prescription medication along with . . . alcohol" the day of the June incident. Grace also stated many of the domestic violence incidents occurred while Josh was under the influence of alcohol.

In reaching his conclusion that Josh was not a habitual drunkard, the trial judge disregarded the prior allegations of domestic violence and the undisputed expert evidence that Josh was alcohol dependent. Instead, he determined that Josh's sobriety of several months "is indicative of someone who is not a habitual drunkard."

Our Supreme Court has held that "[w]hen a forfeiture action is brought because of domestic violence, that assessment necessarily involves an evaluation by the Family Part judge of the parties' relationship and their history of domestic violence." In re F.M., 225 N.J. at 512. Criminal charges, even if dismissed, should also be considered. In re Z.L., 440 N.J. Super. 351, 356 (App. Div. 2015) (finding dismissed criminal charges could support a finding that a defendant was unfit). The trial court also disregarded the August 2017 FFD report that found Josh unfit for duty.

In State v. Freysinger, 311 N.J. Super. 509, 516 (App. Div. 1998), we considered the meaning of "presently an habitual drunkard" as contained in N.J.S.A. 2C:58–3(c)(2). We noted "habitual drunkenness" had been described in matrimonial cases as

> "a fixed, frequent, irresistible or regular habit of drinking alcoholic beverages in such excessive quantities as to produce drunkenness." McVey v. McVey, 119 N.J. Super. 4, 6 (Ch. Div. 1972); see also

> Scully v. Scully, 122 N.J. Super. 94, 96 (Ch. Div. 1972). In McVey, the defendant was declared an habitual drunkard based on corroborated evidence demonstrating that he was drunk four or five times a week. . . . In Scully, we emphasized that the entire conduct over the qualifying period had to be examined and a period of abstention did not negate a finding of habitual drunkenness. 122 N.J. Super. at 97.
>
> [Ibid.]

Here, there is evidence Josh had "a fixed, frequent, irresistible or regular habit of drinking alcoholic beverages in such excessive quantities as to produce drunkenness." McVey, 119 N.J. Super. at 6. He admitted during his FFD interview that he consumed excessive quantities of alcohol two to three times a week. On the day of the June 2017 incident, Josh had taken a bottle of prescription medication and consumed liquor before putting a gun to his head and threatening to take his own life. All of the experts, including Josh's, testified that Josh was dependent on alcohol.

We cannot agree that a seven-month period of sobriety incident to a forfeiture litigation can negate a twenty-nine-year history of constant and excessive alcohol abuse associated with incidents of physical abuse and domestic violence allegations. The credible evidence in the record compels a

finding that Josh was presently a habitual drunkard, and therefore, unfit to possess firearms and a FPIC.[7]

Reversed.[8]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] We are also satisfied the State met its burden as to subsection five of the statute, that Josh is unfit to possess a firearm as a "person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58–3(c)(5).

[8] In an October 30, 2018 order, we deferred consideration to the merits panel of the State's motion to strike certain portions of Josh's brief. We now grant the motion.

A-3180-17T4